**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. 95-202-CCB-2 |
| | * | |
| CRAIG LAMONT SCOTT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Craig Lamont Scott is a federal prisoner who is serving a more than 50-year sentence for convictions stemming from his participation in several armed bank robberies in the early 1990s.[1] To date, Scott has served almost 25 years of his sentence. Now pending is Scott's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute). (ECF 362). The government opposes the motion. (ECF 375), and Scott has replied, (ECF 376). For the reasons explained below, the motion will be granted and Scott's sentence reduced to time served, followed by a three-year term of supervised release.

## BACKGROUND

Between September 1993 and June 1994, Scott and several co-conspirators participated in one attempted and two completed bank robberies. *United States v. Scott*, 202 F.3d 261 (Table), 1999 WL 1134547, at \*1 (4th Cir. 1999). Although guns were involved, no one was physically injured during the commission of these crimes.

Scott, then in his mid-twenties, had no criminal history prior to his participation in the

---

[1] Scott states that he is serving a 627-month sentence, while the government states that the sentence is 617 months. The discrepancy appears to stem from the fact that while Scott was charged for all the robbery-related conduct in the same indictment, the two counts related to the attempted robbery were severed, tried, and sentenced separately, and the fact that Scott was resentenced in 2000 based on a procedural error at his co-defendant's original sentencing. *See United States v. Scott*, 202 F.3d 261 (Table), 1999 WL 1134547, at \*1–2, 5 (4th Cir. 1999); (ECF 173 (Amended Judgment)). For the purposes of this motion, however, the court need not resolve this discrepancy.

1

armed bank robberies. He was charged with one count of conspiracy to commit bank robbery; three counts of bank robbery; and three counts of using and carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). *Scott*, 1999 WL 1134547, at *1. Scott was convicted by a jury on all counts. *Id.*[2] He received 87 months for the robbery and conspiracy counts, and a consecutive 45 years for the § 924(c) counts. (*See* ECF 173).[3] Scott, now 50 years old, has served almost 25 years of his sentence and has a projected release date in December 2038.

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On July 24, 2019, Scott submitted a written request to the warden of FCI Jesup, asking

---

[2] While Scott was charged with all seven counts in the same indictment, the two counts related to the attempted robbery were severed and tried separately. *See Scott*, 1999 WL 1134547, at *1–2. Scott was convicted at both trials. *Id*.

[3] Based on a procedural error at Scott's co-defendant's sentencing, in 1999, the Fourth Circuit vacated Scott's sentence and remanded for resentencing. *See Scott*, 1999 WL 1134547, at *4–5. An amended judgment was entered on February 22, 2000, which references the sentences of 87 months plus five consecutive years imposed on the severed counts, and re-imposes the 20-year consecutive sentence. (ECF 173).

her to file a motion for a reduction of Scott's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF 362-1). The warden denied the request on October 29, 2019. (ECF 362-2). On April 8, 2020, Scott filed the instant motion.

Scott's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is properly before the court. The only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Scott's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

## DISCUSSION

### I. "Extraordinary and compelling reasons"

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). According to the government, because Scott does not move for release based on health, age, or caregiver-related reasons, he necessarily seeks release under U.S.S.G. §1B1.13 cmt. n.1(D) (the "catch-all provision"). The government argues that because Scott's "other reasons" do not meet the BOP criteria as defined in Program Statement 5050.50,[4] he is not eligible for release.

---

[4] Program Statement 5050.50 is titled "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), and sets forth BOP regulations and implementing information

The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act. It indicates that § 3582(c)(1)(A)(i) review is available only upon motion of the BOP, which is no longer correct. *See* U.S.S.G. §1B1.13. Indeed, Congress amended § 3582 with the explicit goal of "increasing the use and transparency of compassionate release," *see* First Step Act § 603(b), presumably because before the amendment—when access to the courts for § 3582(c)(1)(A)(i) review depended on a BOP motion—the compassionate release statute was under-utilized. *See United States v. Beck*, 425 F. Supp. 3d 573, 587 (M.D.N.C. 2019) (the First Step Act amendments to § 3582(c)(1)(A)(i) "establish[] that Congress wants courts to take a *de novo* look at compassionate release motions"). Many district courts have thus reasoned that the catch-all provision's limitation of "other" "extraordinary and compelling reasons" to those defined by the BOP is similarly inconsistent with the First Step Act. *See United States v. Redd*, --- F. Supp. 3d ----, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020) (collecting cases). As the *Redd* court explained,

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

*Id*. at *7; *see also United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."). The court agrees with this reasoning. While Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are

---

relating to compassionate release.

"extraordinary and compelling reasons" to reduce a sentence. *See Redd*, 2020 WL 1248493 at *4; *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).[5]

Scott's proffered "extraordinary and compelling reasons" for a sentence reduction focus on the fact that the bulk of his sentence was based on "stacked" § 924(c) charges. At the time of Scott's sentencing, if multiple § 924(c) counts were charged in the same indictment, the first § 924(c) conviction carried a mandatory, five-year consecutive sentence, and each additional § 924(c) conviction added another 20 years.[6] This was because under the original version of the statute, a § 924(c) conviction was considered "second or subsequent"—thus triggering the 20-year penalty—even if the *first* § 924(c) conviction was obtained in that same case. *See Deal v. United States*, 508 U.S. 129, 132–33 & n.1 (1993). As Scott was convicted on three § 924(c) counts, he was subject to a mandatory, consecutive 45-year sentence.

As part of the First Step Act, Congress amended § 924(c) to eliminate the practice of "stacking" sentences in this way. *See* First Step Act § 403(a). The phrase "second or subsequent conviction" was replaced with "violation of this subsection that occurs *after a prior conviction under this subsection has become final*." *See id.* (emphasis added). Under the amended statute, a defendant like Scott—no criminal history, but convicted of multiple § 924(c) counts arising from a single indictment—is no longer subject to the 20-year penalty. Accordingly, if Scott were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years.

---

[5] The existence of conflicting opinions on this issue does not change the court's conclusion that it has independent discretion to identify "extraordinary and compelling reasons" to reduce a sentence. *See United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) ("Other courts seem to treat the current Policy Statement as binding even after the First Step Act." (collecting cases)).

[6] In 1998, Congress amended § 924(c) to increase the mandatory minimum for a "second or subsequent" § 924(c) conviction from 20 years to 25 years. *See* Pub. L. 105-386, § 1(a), Nov. 13, 1998, 112 Stat. 3469.

Multiple district courts have reasoned that "the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)." *See United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 at 4 (S.D. Cal. Mar. 20, 2020) (collecting cases). The court agrees with the reasoning of these courts. The fact that Scott, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A)(i).

The government argues that the changes to § 924(c) cannot form the basis for sentence reduction under § 3582(c)(1)(A)(i), as the First Step Act did not make the amendments to § 924(c) retroactive. The court is not persuaded. The fact that Scott's sentence will not be reduced pursuant to a retroactive application of the amended § 924(c) does not prohibit the court from considering this legislative change in deciding whether to reduce Scott's sentence. As one district court explained, "[i]t is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) (emphasis in original); *accord United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *1, 4 (D. Neb. Nov. 14, 2019); *see also Redd*, 2020 WL 1248493, at *9. Moreover, granting compassionate release on the basis of the amended § 924(c) is not obviously contrary to congressional intent. The portion of the First Step Act amending § 924(c) is titled "Clarification of Section 924(c) of Title 18, United States Code," *see* First Step Act § 403, suggesting that Congress never intended the statute to result in a "stacked" sentence like Scott's. Accordingly,

pursuant to its independent discretion, the court finds that Scott's continued incarceration under a sentencing scheme that has since been substantially amended is a permissible "extraordinary and compelling" reason to consider him for compassionate release.[7]

## II. Section 3553(a) factors

The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court considers (1) Scott's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Redd*, 2020 WL 1248493, at *8 (citing 18 U.S.C. § 3553(a)(1)–(6)).

With respect to Scott's personal history and characteristics, the court notes that Scott was relatively young—23 years old—and had no criminal record when he agreed to participate in the bank robberies. The court also places significant weight on Scott's post-sentencing conduct, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United* States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Scott has maintained a near-perfect disciplinary record; his only infraction over the course of his incarceration was over 24 years ago. (ECF 362-4 (BOP Disciplinary Records)). Scott has participated in extensive

---

[7] The government also argues that the court's independent discretion in this way amounts to "an exercise of plenary pardon powers," impermissibly intruding upon the President's exclusive power to grant clemency. (ECF 375 at 22–23). The court disagrees. Scott has not petitioned this court for clemency; he is seeking compassionate release pursuant to a federal statute that has recently been amended to increase the role of the judiciary. Contrary to the government's suggestion, the court's exercise of its independent discretion to determine which reasons for release are "extraordinary and compelling" does not violate separation of powers.

educational, vocational, and rehabilitative programming. He has completed multiple parenting classes, courses on job skills, courses aimed at increasing computer literacy, a 210-hour course on agricultural science, and classes in various other subjects. (*See* ECF 362-6 (BOP Certificates); ECF 362-5 (BOP Program Review)). Scott has also taught adult continuing education courses in various subjects. (*See* ECF 362-6). Scott has served as a facilitator in a mentorship program and as an inmate suicide watch companion, a position for which he was selected and trained by BOP staff. (*Id*. at 21, 28).

The court acknowledges that Scott's offenses were indeed serious. While no one was physically injured, Scott's actions undoubtedly caused psychological pain to his victims. The court believes that the 25 years in prison Scott has already served adequately reflect the seriousness of his conduct and recognize the need for deterrence, public safety, and respect for the law. But Scott's continued incarceration would be both disproportionate to the seriousness of his offense and to what Congress now deems appropriate for this kind of conduct. Indeed, Scott's over 50-year sentence is roughly twice as long as federal sentences imposed today for murder.[8] And as the court explained above, the changes to § 924(c) mean that if sentenced today, Scott would likely receive at least 30 fewer years on his sentence.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Scott's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Combined with the "extraordinary and compelling" fact that most of Scott's

---

[8] According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months. *Redd*, 2020 WL 1248493, at *9 n.20 (citing United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2018, Fourth Circuit,* available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf).

lengthy sentence resulted from the now-eliminated practice of "stacking" § 924(c) sentences, the court concludes that Scott is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Scott's motion for sentence reduction will be granted and his sentence will be reduced to time served, followed by a three-year term of supervised release. Based on the information available to the court regarding COVID-19, the court will order immediate release rather than permit a fourteen-day delay. The terms and conditions of supervised release to which Scott was originally sentenced will remain in place, with the added condition that for the first fourteen days, Scott will not leave the address in North Carolina approved by U.S. Probation except, with the prior approval of the Probation Office, for medical or other emergencies. Scott will be required to report to the Probation Office of the Middle District of North Carolina by telephone within 72 hours of his release. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

| | |
|---|---|
| __5/13/20__ | __/S/__ |
| Date | Catherine C. Blake |
| | United States District Judge |